THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY JONES, Defendant-Appellant.

First District (5th Division) No. 1—88—0029

Opinion filed July 6, 1990.

Michael J. Pelletier and Ann C. McCallister, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Paul Gliatta, and John deGrasse, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

In November 1984, Larry Jones (Jones) was convicted by a jury of the offense of rape. He was sentenced to 10 years' imprisonment. On appeal, the case was remanded for the purpose of conducting what has come to be called a *"Batson"* hearing. On remand, the trial judge denied Jones a new trial. Jones appeals the trial court's order denying him a new trial.

■ The equal protection clause prohibits the exclusion by peremptory challenge of prospective jurors by the prosecution "solely on account of their race." (*Batson v. Kentucky* (1986), 476 U.S. 79, 89, 90 L. Ed. 2d 69, 83, 106 S. Ct. 1712, 1719.) A *Batson* hearing arises where it appears from a criminal record that the prosecutor has excluded minorities in exercising its peremptory challenges. Prior to 1986 and apparently back to the days when the English and other Europeans settled in America, a peremptory or other challenge to a venireman or prospective juror had nothing to do with the juror's race, creed, national origin, sex, political affiliation, wealth, poverty, religious or nonreligious affiliation or by whatever other name we now use to describe members of the human race. As a matter of fact the term "jury of one's peers" was unmentioned in either the original State or United States Constitutions or in cases interpreting their provisions as they relate to jurors. As the common law and under the original State and Federal Constitutions, a party entitled to a jury was guaranteed a "fair and impartial jury." A fair and impartial jury was one made up of *"liber homo,"* that is not only a freeman and not

bound, but also one that hath such freedom of mind that " 'he stands indifferent as he stands unsworn.' " *Coughlin v. People* (1893), 144 Ill. 140, 163, 33 N.E. 1, quoting Coke Litt., 155a, note d.

Probably the best case concerning the use of challenges and a description of the old common law and original constitutional concepts of jurors and challenges of veniremen in a criminal case is the case of *Coughlin v. People* (1893), 144 Ill. 140, 33 N.E. 1. That case involved challenges for cause made by the prosecutor and approved by a trial judge in a famous criminal trial in Chicago involving the murder of Dr. Patrick Henry Cronin. Dr. Cronin's body was discovered in a manhole in the Chicago area known as Lakeview. Dr. Cronin was an active member of the "Clan-na-Geal." The organization's aim was to free Ireland from its dependence upon the government of England. In some respects it was similar to organizations of today whose goal it is to eliminate apartheid in Africa.

A number of persons, including Coughlin, were indicted for a conspiracy to do the good doctor in. The trial began on August 30, 1889, and ended on October 22, 1889. 1,009 veniremen were called. 927 were excused for cause. 175 were rejected by the use of peremptory challenges. On appeal the Illinois Supreme Court reversed Coughlin's conviction, holding that the use of some of the challenges offended the prevailing concepts of a fair and impartial jury. The fact that no Irish Catholic ended up on the jury was not even raised as error in the trial or on appeal.

Over the years the concept of fairness and impartiality in juries took on the idea of a jury of one's peers or a cross-section of the community. Finally in 1986 the United States Supreme Court concluded that the unabashed use of race by the prosecution in exercising its peremptory challenges offended United States constitutional guarantees to a fair and impartial jury. *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.

With this background we cite the facts of the case: Jones, an Afro-American, was indicted of the crime of rape. Jones' defense was the consent of the victim. The alleged victim was a white woman. The record does not reflect the ethnic background of this woman. A jury convicted Jones of the offense. The trial court sentenced Jones to 10 years with our Department of Corrections. Jones appealed his conviction charging that the prosecution improperly exercised its peremptory challenges to exclude Afro-American jurors.

On appeal this court affirmed Jones' conviction, but based on the cited *Batson* case remanded to the trial court for a hearing to permit Jones to attempt to make a showing that the prosecution had exer-

cised its peremptory challenges solely to strike prospective Afro-American members of the jury. This court directed that if such a showing was made and the prosecution failed to provide neutral explanations for the exercise of its challenges, the trial court was to vacate Jones' conviction and grant a new trial; otherwise, Jones' conviction and sentence was to stand. *People v. Jones* (1987), 155 Ill. App. 3d 641, 508 N.E.2d 357.

■ The trial court held a hearing in accordance with *Batson v. Kentucky.* (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) At the *Batson* hearing, it was established that the State had peremptorily challenged eight veniremen from the jury, five of whom were black and two who were Hispanic. A defendant contending that the prosecution's exercise of peremptory challenges was racially motivated has the burden of showing purposeful discrimination. (*Batson v. Kentucky* (1986), 476 U.S. 79, 93, 90 L. Ed. 2d 69, 85, 106 S. Ct. 1712, 1721.) At the hearing the trial court found that Jones established a *prima facie* case of the discriminatory and unconstitutional use of peremptory challenges by the State. As dictated by the *Batson* decision, the State was required to come forward with "neutral reasons" for having excluded the Afro-Americans as jurors in Jones' previous trial. *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.

The following are the alleged neutral reasons for the exclusion of the jurors as advanced by the prosecution in the brief the State filed in this court:

> "The prosecutor explained that Edwina David had been peremptorily challenged because she had been convicted of involuntary manslaughter. Additionally the prosecutor was concerned that the venireman's occupation, which involved social work, might have been prejudicial to the People's case. Defense counsel agreed that Davis was properly excused by the people because she was a convicted felon."

> "Anthony Curry was peremptorily challenged for four reasons. First, he was unemployed. *** Second, his *voir dire* testimony was inconsistent with the information he had written on his juror card. This would indicate that Curry was either untruthful or inattentive. *** Third, Curry's demeanor indicated a hostility toward women. His comments, combined with the fact that he was divorced, created a reasonable concern in the prosecutor's mind as to whether the venireman would be biased in deciding a case which hinged on the credibility of a woman. *** Fourth, the prosecutor was concerned with the fact that Curry

did not have any visible means of supporting his child."

"Gerald Green was peremptorily challenged for three reasons. First, his father was a police officer. \*\*\* Second, Green's demeanor indicated a hostility toward his father. Green referred to his father as a 'cop.' The prosecutor correctly deemed this to be a term of disrespect. Additionally, the venireman testified that he *never* talked to his father about his father's job. \*\*\* Third, no one who served as a juror had been a party to a lawsuit. The prosecutor was concerned that the venireman's prior involvement with the legal system might affect his assessment of the victim's credibility."

"Linda Berry was peremptorily challenged for three reasons. First, she lived in defendant's neighborhood. \*\*\* Second, the prosecutor believed that Berry exhibited a lack of intellectual capacity and he was concerned that this would prevent her from performing her duties as a juror. \*\*\* Third, the prosecutor believed that Berry's occupation as a motel maid may have caused her to be too quick to believe that defendant's contention that the victim consented to sexual relations."

"[E]rma Delaney was challenged because she lived in the neighborhood where the crime was committed."

The trial judge concluded that the prosecutor articulated legitimate race-neutral reasons for the exclusion of the veniremen. After a denial of Jones' motion for reconsideration this second appeal followed.

Jones has appealed the trial court's decision in the *Batson* hearing. Jones argues that the reasons advanced by the State were pretextual, that the trial court's finding that the State had rebutted Jones' *prima facie* case of racial discrimination was clearly erroneous, and that Jones is entitled to a new trial. Jones also argues that because of this showing his constitutional right to a trial by an impartial jury was violated. On the other hand the prosecutor argues that its showing of neutrality and the trial court's acceptance thereof should not be overturned by this court. We reluctantly agree.

 Once a defendant makes out a *prima facie* case of discrimination, the prosecutor need only "articulate a neutral explanation related to the particular case to be tried." (*People v. Harris* (1989), 129 Ill. 2d 123, 177, 544 N.E.2d 357, *cert. denied* (1990), 494 U.S. 1018, 108 L. Ed. 2d 498, 110 S. Ct. 1323.) The State's explanations must first be clear, reasonably specific, legitimate, and nonracial in order to dispel the presumption created by the *prima facie* case. (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 89, 106 S. Ct. at 1724.) Although the

State's explanations need not rise to the level justifying a challenge for cause, a mere assertion that the prosecutor acted in good faith or without a discriminatory motive will not suffice. (*People v. Harris* (1989), 129 Ill. 2d 123, 177, 544 N.E.2d 357, *cert. denied* (1990), 494 U.S. 1018, 108 L. Ed. 2d 498, 110 S. Ct. 1323; *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) Furthermore, if a prosecutor's explanation is so limited as to make citation of the challenged venire member's race essential to the explanation's coherence, then the explanation can truly be said to rest "solely" or "simply" on the racial factor—for otherwise, stripped of the racial underpinning, it would effectively not have been a sufficient explanation at all and would have failed to rebut a *Batson prima facie* case. (*People v. Hope* (1990), 137 Ill. 2d 430.) Once the State has come forward with its reasons for striking the venire persons, the trial court must then determine whether the explanations are sufficient to rebut defendant's *prima facie* case. To do so, the trial court must make a "sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case." (*People v. Harris* (1989), 129 Ill. 2d 123, 174, 544 N.E.2d 357, *cert. denied* (1990), 494 U.S. 1018, 108 L. Ed. 2d 498, 110 S. Ct. 1323.) The presumption created by the *prima facie* case may be rebutted if the State offers a *Batson* sufficient neutral explanation. The defendant then has the opportunity to rebut the prosecution's explanation as being pretextual. (*People v. Young* (1989), 128 Ill. 2d 1, 27, 538 N.E.2d 453.) Then after the trial court weighs the evidence in light of the *prima facie* case, the adequately articulated neutral explanations, and any rebuttal of those explanations the court will decide the ultimate question whether purposeful discrimination has been shown by a preponderance of the evidence. *People v. Harris* (1989), 129 Ill. 2d 123, 177, 544 N.E.2d 357, *cert. denied* (1990), 494 U.S. 1018, 108 L. Ed. 2d 498, 110 S. Ct. 1323.

██▐ ▌ At the conclusion of the hearing, the trial court has the duty to weigh the evidence and determine if the defendant has established purposeful discrimination. A trial court's *Batson* determination will not be overturned unless it is against the manifest weight of the evidence. (*People v. Mahaffey* (1989), 128 Ill. 2d 388, 539 N.E.2d 1172, *cert. denied* (1989), 493 U.S. 873, 107 L. Ed. 2d 156, 110 S. Ct. 203; *People v. Evans* (1988), 125 Ill. 2d 50, 71, 530 N.E.2d 1360, 1365-66, *cert. denied* (1989), 490 U.S. 1113, 104 L. Ed. 2d 1036, 109 S. Ct. 3175.) Trial judges are especially well-suited to make this determination because they are familiar with local conditions and prosecutors, and can draw upon their power of observation and judicial experience as a guide in distinguishing a true case of discrimination from

a false one. (*Evans*, 125 Ill. 2d at 71, 530 N.E.2d at 1367.) "Since the trial judge's findings on the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21, 106 S. Ct. at 1724 n.21.

■ The supreme court has not attempted to define the term "neutral explanation" for the exercise of a peremptory challenge. However, the following have been held to be racially neutral. Prosecution properly dismissed the venireman because he was not too happy with the venireman's demeanor and how he answered the questions. (*People v. Talley* (1987), 152 Ill. App. 3d 971, 987, 504 N.E.2d 1318.) Employment status and positions of prospective jurors have been held to be racially neutral reasons for the exercise of peremptory challenges. (*People v. Mack* (1989), 128 Ill. 2d 231, 241, 538 N.E.2d 1107.) The fact that a potential juror lived in the area of the crime has been found to be a legitimate race-neutral explanation for the use of a peremptory challenge. *People v. Williams* (1988), 177 Ill. App. 3d 787, 789, 532 N.E.2d 1044, 1047.

A mere reading of the reasons advanced by the State for excluding the Afro-American veniremen discloses that at best they are subjectively neutral reasons. For example, one reason the prosecutor cites for excluding potential Afro-American jurors is that one juror lived in the same neighborhood as the defendant and the other juror lived in the same neighborhood as the incident. In one instance the prosecutor equated 1527 S. Lawndale as being in the same neighborhood as 209 S. Kalow. In the other instance he equated 933 W. Fletcher with 1757 W. Fletcher. Anyone who is familiar with Chicago's division of neighborhoods realizes that they cannot be determined by metes and bounds. A neighborhood in Chicago can encompass an area as small as a one-block area or as large as a square mile or two. Many neighborhoods are not determined by blocks, but rather by parishes or ethnic conclaves. To many Catholics, particularly on the south side, Chicago is divided into parishes such as "Viz," "Tommy More," and "Barnabas." To others, such names as "Streeterville," "Canaryville" and "Bucktown" describe the neighborhood.

Without going into further detail, it is apparent from a reading of the alleged "neutral reasons" advanced by the prosecutor that these "neutral reasons" are obviously subjective. The important issue in this case is whether in a *Batson* hearing the prosecutor's explanation of why he excluded minorities from a jury must be objectively neutral or subjectively so. No case law in the criminal area appears to be of much help.

Unfortunately none of the many cases cited by the parties address this topic. Defendant argues that the reasons asserted are contrived from a post-trial review of the jury cards. Nothing in the record suggests such an insidious motive.

The only cases the court found discussing the issue of "neutrality" is in the area of news coverage. In the case of a journalist tarring the name of some innocent public figure the test of responsibility is not objective truth but a journalist's subjective belief. The test of neutrality of reportage is subjective not objective. Unless a newsman deliberately distorts statements given him by another he is free of the consequences of his act. (*Krauss v. Champaign News Gazette* (1978), 59 Ill. App. 3d 745, 375 N.E.2d 1362.) There is no showing here of a deliberate distortion of the prosecutor's so-called reasons in excluding Afro-Americans from the jury of the Jones 1984 trial.

■■■ We conclude that the exercise of peremptory challenges by a prosecutor in a criminal case involving the race, sex, religion, politics, or ethnic background of a prospective juror must of necessity be subjectively neutral. Any other conclusion would make the grant of peremptory challenges in both civil and criminal cases almost meaningless. In this case the defendant is asking us to penetrate the surface reasons to attribute racial reasons, thereby effectively asking us to eliminate peremptory challenges. In *Batson v. Kentucky*, the Supreme Court recognized the "important position" of peremptory challenges in trial procedure and acknowledged that generally such challenges can contribute to the administration of justice. (*Batson*, 476 U.S. at 98-99, 90 L. Ed. 2d at 89, 106 S. Ct. at 1724.) As of this date neither the legislature nor the supreme court has told us to eliminate peremptory challenges. Although *Batson* prohibits the use of racially motivated reasons for exercising peremptory challenges, *Batson* has failed to give us any guidelines, specifications or reasons for determining what the underlying motive of a prosecutor might be.

· ■■■ As a matter of fact our Illinois Supreme Court has held that a determination of a juror's impartiality even in the case of a challenge for cause is not "purely an objective determination." (*People v. Cole* (1973), 54 Ill. 2d 401, 414, 298 N.E.2d 705, 712.) Strangely enough in support of this proposition the *Cole* court cites the case of *Coughlin v. People* (1893), 144 Ill. 140, 33 N.E. 1.

■■■ Although Jones' attorney makes a forceful argument that the reasons advanced by the State are contrived, no facts in the record support that conclusion. At best the reasons the State advances are obscure. However, absent some evidence in the record to support Jones' charge that the State's exclusion of the Afro-American or His-

panic-American prospective jurors was pretextual or contrived, we must affirm the trial court and let Jones' conviction and sentence stand.

For the above reasons we affirm the trial judge.

Judgment affirmed.

LORENZ and GORDON, JJ., concur.