THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERTO KINDELAN, Defendant-Appellant.

First District (1st Division)   No. 1—88—1345

Opinion filed May 6, 1991.

Randolph N. Stone, Public Defender, of Chicago (Cary Berman and Donald Honchell, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, William P. Pistorius, and Joseph J. Higgins, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, Alberto Kindelan, appeals from the trial court's determination on remand for a *Batson* hearing that the State had provided sufficient race-neutral reasons for its exercise of peremptory challenges against black venirepersons to rebut defendant's *prima facie* case of racial discrimination. On appeal, defendant contends that: (1) the trial court erred in finding that the State had offered sufficient race-neutral explanations for its use of peremptory challenges to exclude blacks from the jury; and (2) the voluntary manslaughter instruction erroneously stated the burden of proof. In response, the State argues that the defendant's failure to establish a *prima facie* case of race discrimination in the State's use of peremptory challenges obviates the need to review the State's race-neutral explanations. For the following reasons, we find that defendant established a *prima facie* case of race discrimination and that the State failed to offer sufficient race-neutral reasons to rebut defendant's *prima facie* case. Accordingly, defendant's conviction is reversed; his sentence is vacated; this court's opinion entered in case number 1—84—2480, *People v. Kindelan* (1986), 150 Ill. App. 3d 818, 502 N.E.2d 422 (*Kindelan I*) is vacated; the trial court's *Batson* determination on remand is reversed; and the cause is remanded for a new trial.

In *Kindelan I*, this court affirmed defendant's conviction and sentence for the murder of Valerino Guillen on the evening of July 2, 1983, and remanded the cause for an evidentiary hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, to determine whether the State had purposefully discriminated against blacks in executing its peremptory challenges. Upon remanding the cause, this court instructed the trial court that in the event the trial court found that the State had not purposefully discriminated, the court was to confirm the judgment and sentence. If the court found that the State had purposefully discriminated, the trial court was to order a new trial.

The facts relating to the *Batson* hearing are fully discussed as they relate to the issues raised on this appeal. Following the hearing, the trial court determined that defendant had established a *prima facie* case of race discrimination, but that the State had provided sufficient race-neutral explanations to rebut the presumption. Accordingly, pursuant to the directions of this court in *Kindelan I*, the trial court confirmed its original judgment and sentence. Defendant's appeal from the trial court's *Batson* determination followed.

In the interests of clarity, the State's contention that defendant failed to establish a *prima facie* case of race discrimination in the State's use of peremptory challenges shall be discussed first. In *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the United States Supreme Court established a two-part test (the *Batson* test) to determine whether a prosecutor had used his peremptory challenges to discriminate against members of defendant's racial group. The first part of the test mandates that defendant establish a *prima facie* case of racial discrimination. (*Batson*, 476 U.S. at 93-94, 90 L. Ed. 2d at 85-86, 106 S. Ct. at 1721.) Once the court finds that such a case has been established, the burden shifts to the State to provide a race-neutral explanation for each peremptory challenge to which defendant objected. *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.

Pursuant to *Batson*, to establish a *prima facie* case of race discrimination, the defendant must prove three elements: (1) defendant is a member of a cognizable racial group; (2) the State exercised its peremptory challenges to remove members of that cognizable racial group from the venire; and (3) other relevant circumstances raise an inference that the State used peremptory challenges to exclude black venirepersons. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.

■ Recently, in *Powers v. Ohio* (1991), 499 U.S. ___, 113 L. Ed. 2d 411, 111 S. Ct. 1364, the United States Supreme Court relaxed the *prima facie* requirements of the *Batson* test and held that racial identity between the defendant and the excluded venirepersons is not necessary to establish a *prima facie* case of race discrimination. In effect, *Powers* eliminates the first element of the *prima facie* part of the *Batson* test (defendant must be a member of a cognizable racial group) and incorporates the second element (racial identity) into the third element (relevant circumstances). As a result, in order to prove a *prima facie* case of race discrimination in the State's use of peremptory challenges, defendant must now prove relevant circumstances (which may include racial identity between the defendant and the excluded venireperson) which raise an inference that the State used its peremptory challenges to exclude members of the venire for race-based reasons. The *Powers* court specifically noted that its decision is not inconsistent with *Batson*. Racial identity between the defendant and the excluded venireperson remains a factor in that, when present, it is a relevant circumstance to be considered by the court.

■ Other relevant circumstances which a trial court may consider in determining whether a *prima facie* case has been established include: a pattern of strikes by the State against minority venirepersons (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712); (2) use of peremptory challenges against a group of venirepersons who share race as their only common characteristic (*People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351); a disproportionate use of strikes against minority venirepersons (*People v. Mahaffey* (1989), 128 Ill. 2d 388, 539 N.E.2d 1172); the level of minority representation in the venire as compared to that in the jury; the race identity between the defendant and the victim; and the race of the witnesses (*People v. Mahaffey*, 128 Ill. 2d 388, 539 N.E.2d 1172). A *prima facie* case cannot be established by mere numbers. (*People v. Mahaffey*, 128 Ill. 2d 388, 539 N.E.2d 1172.) All relevant circumstances must be considered. Moreover, a trial court's determination as to whether a *prima facie* case of discrimination has been established will not be reversed unless it is against the manifest weight of the evidence. *People v. Hope* (1990), 137 Ill. 2d 430, 560 N.E.2d 849.

A *prima facie* case of racial discrimination was found to have been established in *People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351, *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357, and *People v. Hope* (1990), 137 Ill. 2d 430, 560 N.E.2d 849. In *McDonald*, the supreme court based its determination on the facts that the prosecutor had exercised a pattern of strikes to exclude all 16 black venirepersons and that the only characteristic shared by the excluded venirepersons was their race. (*McDonald*, 125 Ill. 2d at 196-97.) Similarly, in *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357, even though 2 of the 12 jurors were black, the supreme court found that defendant had established a *prima facie* case of race discrimination based on the pattern of strikes used by the State against black venirepersons (15 out of 20 peremptory challenges used against blacks), and the fact that the black venirepersons excluded were as heterogeneous as the community as a whole, sharing race as their only common characteristic. Likewise, in *Hope*, the supreme court found that a *prima facie* case of discrimination had been established by the State's pattern of strikes which resulted in excluding all black venirepersons not challenged for cause; the fact that the only characteristic shared by the excluded venirepersons was their race; 19% of the venire had been black and no black venireperson had been selected for the jury; and the defendant was black and had murdered a white male. *Hope*, 137 Ill. 2d at 463-65.

■ The circumstances in the present case are similar to those in *McDonald, Harris* and *Hope* regarding pattern of strikes and heterogeneity, but differ as to the comparison of the composition of the venire and the jury. First, all seven peremptory challenges exercised by the State were exercised against black venirepersons, resulting in a pattern of strikes against blacks. Second, the excluded venirepersons were as heterogeneous as the community as a whole, sharing only race as their common characteristic. For example, three of the excluded venirepersons were male, four were female; four were married, one was widowed, one was divorced and one was single; six were employed, ranging in length of employment from 6 months to 32 years; they were employed in a variety of occupations: administrator with the Department of Health, phone clerk with a commodities firm, community representative with the board of education, head of the mailroom of a major merchandising firm; truck driver; Chicago Public Library employee; student at Job Corp.; some had children, others did not; some had been victims of previous crimes, others had not; one had served on a jury, two had been called but not selected; various occupations of spouses and children; one had a police officer friend, another had friends who were criminal and civil lawyers; some rented, some were owners; and they had lived at their current addresses for various lengths of time. Notwithstanding the pattern of strikes and the fact that race was the only common characteristic of the excluded venirepersons, the percentage of blacks in the venire and on the jury remained the same at 25%. However, in our view, this numerical coincidence does not offset the evidence of racial discrimination demonstrated by the State's use of all seven of its peremptory challenges to exclude black venirepersons and by the fact that race was the only shared characteristic of those excluded.

Those cases relied upon by the State where the court found a *prima facie* case had not been established are factually distinguishable from the present case: *People v. Holman* (1989), 132 Ill. 2d 128, 547 N.E.2d 124 (20% of the venire had been black and 33% of the jury was black; the State used 10 peremptory challenges against whites and four against blacks); *People v. Garrett* (1990), 139 Ill. 2d 189, 564 N.E.2d 784 (defendant introduced only a list of black venire members who had been challenged by the State; no evidence was presented as to the proportion of peremptory challenges used against blacks); *People v. Fox* (1988), 177 Ill. App. 3d 602, 532 N.E.2d 472 (the court found no evidence that the prosecutor had "set out" to keep blacks off the jury).

Accordingly, predicated on the fact that the State used all seven of its peremptory challenges to exclude blacks from the jury and the fact that the excluded venirepersons shared race as their only common characteristic, we conclude that defendant has established a *prima facie* case of race discrimination in the State's use of peremptory challenges.

As previously stated, once defendant has established a *prima facie* case of discrimination, the burden shifts to the State to provide a race-neutral explanation for each peremptory challenge to which defendant objects. (*Batson v. Kentucky* (1986), 476 U.S. 79, 93-94, 90 L. Ed. 2d 69, 85-86, 106 S. Ct. 1712, 1721.) Regarding this part of the *Batson* test, defendant argues that the trial court's determination that the State had offered sufficient race-neutral reasons to exclude blacks from the jury venire through the use of peremptory challenges was contrary to the manifest weight of the evidence. In order to rebut the presumption created by a *prima facie* case, the State's explanations must be clear, reasonably specific, legitimate and nonracial. (*People v. Hope* (1990), 137 Ill. 2d 430, 560 N.E.2d 849.) The explanations need not rise to the level justifying a challenge for cause. However, a mere assertion that the prosecution acted in good faith or without discriminatory motive will not suffice. (*People v. Harris* (1989), 129 Ill. 2d 123, 174, 544 N.E.2d 357.) It is then incumbent upon the trial court to make a sincere and reasoned attempt to evaluate the State's explanations. (*People v. Hope*, 137 Ill. 2d 430, 560 N.E.2d 849.) In doing so, the court must assess the genuineness of the State's assertions and determine whether those assertions are legitimate and race-neutral. (*People v. Baisten* (1990), 203 Ill. App. 3d 64, 560 N.E.2d 1060.) Further, the trial court must be cognizant that the use of peremptory challenges by a prosecutor in a criminal case must of necessity be subjectively neutral. Any other conclusion would render peremptory challenges meaningless. (*People v. Jones* (1990), 201 Ill. App. 3d 440, 559 N.E.2d 112.) Whether the State has met its burden is a question of fact, grounded in credibility. Accordingly, the trial court's decision is entitled to great deference and will not be reversed on appeal unless it is against the manifest weight of the evidence. (*People v. Hope* (1990), 137 Ill. 2d 430, 467, 560 N.E.2d 849; *People v. Harris* (1989), 129 Ill. 2d 123, 175, 544 N.E.2d 357.) Because exclusion of even one minority venireperson on the basis of race is unconstitutional and requires reversal of defendant's conviction (*People v. McDonald* (1988), 125 Ill. 2d 182, 200, 530 N.E.2d 1351), the State's explanation for excluding each black venireperson by use of peremptory challenge must be reviewed.

*Rupert Banks*—The parties agree that Banks was correctly challenged.

■ *Pamela Gurley*[1]—At the time of jury selection, Gurley was 24 years old. She had been employed for five years as a phone clerk for a commodities firm and dealt with the public over the telephone. The State explained that Gurley was challenged because of her youth, which the State believed would render her unable to sit in judgment and to express her opinions to the older jurors. Defendant argued that the State's explanation was pretextual and inconsistent because two other jurors of relatively young age had been accepted. Defendant's claim of inconsistency has no basis in the record. The two jurors to whom he referred were both 31 years old, seven years older than Gurley. Moreover, Rupert Banks, age 22, had also been excluded. Youth has been accepted as a racially neutral, case-specific reason on the ground that prosecutors reasonably may have believed that young persons lack the necessary maturity to serve as a responsible juror. (*People v. Taylor* (1988), 171 Ill. App. 3d 261, 524 N.E.2d 1216.) Therefore, we find this explanation to be sufficiently race-neutral.

■ *Kalander White*—White had been employed as an administrator at the Illinois Department of Mental Health for 10 years. The State excused White on the ground that he might confuse the issues of either sanity or insanity and incorrectly influence the other jurors during deliberations. In giving this explanation, the State acknowledged that the issue of sanity was not expected to be brought up at trial. In reliance on *People v. Turner* (1986), 42 Cal. 3d 711, 726 P. 2d 102, 230 Cal. Rptr. 656, defendant contends that the employment reason given by the State for excluding White was not case specific and that there was no evidence during the *voir dire* that White would be confused on the issue of sanity. In *Turner*, in explaining why he had excused a black woman from the venire, the prosecutor stated:

> "I don't remember exactly, but I think it was something in her work as to that she was doing that from our standpoint, that background was not—would not be good for the People's case."
> (42 Cal. 3d at 725, 230 Cal. Rptr. at 664, 726 P.2d at 110.)

The *Turner* court found that the explanation was so lacking in content as to amount to no explanation at all. In making this finding, the court noted that although the prosecutor had questioned the venire-

---

[1] In its brief, the State refers to this venireperson as Patricia Gurley. However, the record indicates that the correct name is Pamela Gurley.

person during *voir dire*, he had asked no questions about her job as a supervising hospital unit coordinator.

Unlike in *Turner*, in the present case, the State specifically stated that it believed that White's background in mental health may cause him to confuse issues of sanity and insanity and thereby affect the jury as a whole. Further, the court asked White questions about the duties of his position during *voir dire*. The State's concern over employment positions has been found to be sufficiently race-neutral. (*People v. Mack* (1989), 128 Ill. 2d 231, 538 N.E.2d 1107 (security guard who was sporadically employed; legal brief clerk in a criminal defense law firm and an unemployed individual).) Accordingly, we find the State's explanation to be sufficiently race-neutral.

■ *Charles Howse*—During *voir dire*, Howse indicated that he had been called previously for jury service, had waited around all day, but had never been called. The State excused Howse because it felt that Howse's demeanor and tone indicated that he considered jury duty to be an imposition on his time and, therefore, would not listen to the evidence as fairly and impartially as he should. Further, the State noted a discrepancy in Howse's answers during *voir dire* that caused it some additional concern. Specifically, when asked by the court if he could be fair to the State, Howse replied, "Yes." When asked if he could be fair to the defendant, he replied, "Yes, I can." The trial court gave no credence to the "Yes/Yes, I can" distinction, but found that demeanor was a sufficient race-neutral explanation.

On appeal, the State drops the "Yes/Yes, I can" argument and focuses on the demeanor argument. An explanation which focuses on a venireperson's body language or demeanor must be carefully scrutinized because it is extremely subjective and can be easily used as pretext. (*People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357.) However, the trial court is in the best position to observe the prospective juror's behavior and to evaluate the prosecutor's sincerity. (*People v. Baisten* (1990), 203 Ill. App. 3d 64, 560 N.E.2d 1060.) Demeanor has been consistently recognized as a legitimate, racially neutral reason for using a peremptory challenge. (*People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357 (meek and sleepy juror who did not answer in a forthright manner); *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453 (hesitation in answering questions); *People v. Baisten* (1990), 203 Ill. App. 3d 64, 560 N.E.2d 1060 (avoided looking at the judge); *People v. Taylor* (1988), 171 Ill. App. 3d 261, 524 N.E.2d 1216 (forceful demeanor); *People v. Talley* (1987), 152 Ill. App. 3d 971, 504 N.E.2d 1318 (the prosecutor was "not too happy" with the demeanor of the

venireperson).) Accordingly, we find the State's explanation to be sufficiently race-neutral.

*Claudia Townsend, Dorothy Lyles, Anne Neely*—The State excluded Townsend, Lyles and Neely on the ground that each had been previously called for jury service, but had been excused from jury duty. At the *Batson* hearing, the State admitted that it did not know why Townsend, Lyles and Neely had been previously excluded from jury duty. In fact, the State did not even know if Lyles and Neely had been called to sit on a jury for a civil trial or for a criminal trial. Despite this lack of pertinent information, the State exercised peremptory challenges against all three of them on the ground that a potential existed for their lack of impartiality. In response, defendant argued that the State's explanation was pretextual and inconsistent. It was pretextual because, during *voir dire*, the State had made no effort to inquire as to the specific circumstances of the prior jury exclusions. It was inconsistent because four seated white jurors had also been previously called for jury service and had not been selected at those previous times. Without addressing the inconsistency argument, the trial court found that having been called to jury duty and excused was a legitimate, race-neutral reason for a peremptory challenge.

With respect to defendant's allegation that the State's reason for excluding Townsend, Lyles and Neely was pretextual, defendant argues that the State should have sought more information during *voir dire* as to why these jurors had previously been excluded from jury service. Explanations for excluding venirepersons predicated on the State's lack of information should be closely scrutinized since they can be easily used as a pretext for discriminatory challenges. (*People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357.) In scrutinizing these explanations, the court should consider whether the State had made any attempt to discover unknown relevant information, such as requesting the court to ask supplemental questions during *voir dire*. *People v. Harris*, 129 Ill. 2d 123, 544 N.E.2d 357.

In the present case, there is no evidence in the record that the trial court scrutinized the State's explanations at all. Although deference is to be given to the trial court's determinations, we find that, in the present case, there is no evidence to support a determination that the prior jury service explanation was legitimate. This lack of evidence is particularly noteworthy in light of the fact that there was a clear opportunity for the State to have inquired further so as to provide some support. As a result, we conclude that the trial court's determination is contrary to the manifest weight of the evidence and constitutes reversible error.

The inconsistency with which this reason was applied in the present case provides further grounds for reversal. If the State excludes a minority venireperson for a certain reason, yet accepts a white venireperson who has the same characteristic, the exclusion is not *per se* pretextual (*People v. Harris*, 129 Ill. 2d 123, 544 N.E.2d 357), but the inconsistency should be given weight by the trial court. (*People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351.) In *McDonald*, the prosecutor challenged for cause one black venireperson and peremptorily challenged the remaining 16 black venirepersons. The prosecutor explained that he had peremptorily challenged two of the black venirepersons because their spouses were teachers, one young single black male because young single males are the worst jurors in rape cases, several black venirepersons because they were mothers of large families, one black venireperson because she had had prior jury service, one black venireperson because she was a nurse and two black venirepersons, ages 63 and 69, because of their advanced age. In contradiction to these explanations, the State had accepted a white female teacher, an 18-year-old single white male, a white woman who had a large family, a white woman who had served on two prior juries, a white nurse's assistant, and a 67-year-old white female. The supreme court found that "[i]t is clear that the prosecutor's proffered reasons for the exclusion of black veniremen were not consistently applied between the challenged black veniremen and the white veniremen who eventually sat on the defendant's jury." (*McDonald*, 125 Ill. 2d at 200.) Accordingly, the supreme court affirmed the trial court's determination that the stated reasons for exclusion were not credible and remanded the cause for a new trial.

■ Similarly, in the present case, we find that the explanation of prior jury service as the ground for peremptorily challenging three black venirepersons has been inconsistently applied and that no explanation was offered for this inconsistency. Accordingly, because the discriminatory use of peremptory challenges against even one venireperson is unconstitutional (*People v. McDonald*, 125 Ill. 2d 182, 530 N.E.2d 1351), defendant's conviction is reversed and the cause is remanded for new trial. Our decision to remand for a new trial obviates the need to discuss defendant's contention that the voluntary manslaughter jury instruction erroneously stated the State's burden of proof.

■ Finally, we believe that the evidence at trial was sufficient for the trier of fact to conclude that defendant was guilty beyond a reasonable doubt. This does not mean that we are making a finding as to defendant's guilt or innocence which would be binding on retrial,

but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting defendant to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.

For the aforementioned reasons, defendant's conviction is reversed; his sentence is vacated; this court's opinion entered in case number 1—84—2480, *People v. Kindelan* (1986), 150 Ill. App. 3d 818, 502 N.E.2d 422, is vacated; the trial court's *Batson* determination on remand is reversed; and the cause is remanded for a new trial.

Reversed in part; vacated in part and remanded for a new trial.

MANNING, P.J., and O'CONNOR, J., concur.