THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MIGUEL DeHOYOS, Defendant-Appellant.

First District (1st Division) No. 85—3122

Opinion filed March 28, 1988.—Rehearing denied August 16, 1988.

1088

Dennis M. Doherty, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula Carstensen, and Gabriel J. DeMatteo, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

After a jury trial, defendant, Miguel DeHoyos, was found guilty of rape, deviate sexual assault, robbery and theft and was sentenced to 22 years' imprisonment for rape and seven years' imprisonment for robbery, the sentences to run concurrently. On appeal, defendant contends that (1) his motion to quash his arrest and suppress evidence was improperly denied; (2) evidence of other crimes committed by defendant was improperly introduced; and (3) remarks made by the prosecutor during closing argument deprived him of a fair trial.

At trial, the victim testified as to the following facts. On June 25, 1983, at approximately 2 a.m., the victim was asleep in her apartment when she awoke and saw defendant standing in her bedroom doorway. The victim repeatedly asked the defendant to leave but he did not. The defendant asked the victim to take him to the front door of the apartment. The victim got out of bed and picked up her door keys. Just as she reached the front door, the defendant grabbed her arm.

The victim screamed and the defendant placed his hand over her mouth and held her against the wall. While holding the victim against the wall, the defendant shut a living room window which was wide open. The defendant and the victim returned to the bedroom. The defendant told the victim that his name was "Joe," that he was a Chicago policeman who was on vacation and that he was being chased by a gang. Defendant showed the victim a picture of a young girl who he stated was his daughter. The defendant went with the victim into the kitchen and took a can of beer from the refrigerator.

Defendant directed the victim back into the bedroom and told her he wanted "to have her." The victim tried to talk the defendant out of harming her, but he pinned her onto the bed, climbed on top of her and covered her mouth and nose. Defendant told the victim he had killed people in Vietnam and that killing someone with his hands would mean nothing to him. He told the victim she "was going to have to do this." The defendant told the victim to unrobe and forced the victim, against her repeated pleas to stop, to engage in the acts of oral, vaginal and anal intercourse. Afterward, the defendant fell asleep upon the victim and she tried to move out from under him. The defendant, however, awoke and forced her to engage in additional sex acts against her will. The victim was in a great deal of pain and asked defendant if she could go to the bathroom. The defendant agreed and accompanied her to the bathroom. Defendant asked if he could stay with her and the victim told him he could not and that her family would arrive at her apartment in the morning. At approximately 5:45 a.m., the victim's alarm clock sounded and defendant got up and dressed. Defendant used some paper towels from the kitchen to wipe off the beer can he had taken earlier. Defendant placed the victim in her bedroom closet and shut the door. The victim heard drawers in her bedroom being opened, the phone ring a number of times and a window being raised. She heard the phone ring again and got out of the closet, closed the window and locked it and answered the phone. The victim spoke to her sister on the phone and related what had happened. Shortly thereafter, her sister, brother-in-law and the police arrived at her apartment.

Prior to trial, defendant moved to quash his arrest and to suppress evidence against him and the trial court conducted an evidentiary hearing. The record from the evidentiary hearing reveals the following facts. On July 22, 1983, at approximately 12:45 a.m. two Chicago police officers responded to a complaint of a street disturbance. When the police officers arrived at the designated location, they observed defendant exit an alley, turn back and reenter the alley,

and then change his direction and once again exit the alley. The officers approached the defendant and inquired why he had been in the alley. Defendant stated he had been out walking and had been talking to a woman in the alley who had been walking her dog. Upon inquiry by the officers, defendant was unable to produce any documents to establish his identity. The defendant was taken to the police station for a "name check." At the police station, the defendant stated his name, address and place of employment. Further, he was photographed and released. The following day, the photograph of defendant was shown to the victim in a photo array and she identified him as the man who raped her.

After the victim had identified the defendant, the police officers proceeded to defendant's apartment and recovered property which was taken from the victim's apartment on June 25, 1983, and in two subsequent robberies of the same apartment. The defendant was arrested and was again identified in a police lineup by the victim as the man who assaulted her. Defendant's motions to quash his arrest and to suppress evidence were denied.

## I

Defendant first argues that the trial court erred in denying his motions to quash his arrest and suppress evidence where he was improperly stopped, seized, questioned and photographed by the police. The State maintains that the police officers were aware of sufficient facts to justify an investigatory stop of defendant and that no improper seizure occurred since defendant consented to the police officers' request to accompany them to the police station.

In *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and its progeny, the United States Supreme Court held that a police officer may stop and question an individual where the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. Under the guidelines of *Terry*, a police officer under appropriate circumstances, and in an appropriate manner, may approach and stop an individual in order to investigate possible criminal behavior provided the officer's decision to stop is based on specific and articulable facts which, when combined with rational inferences therefrom, reasonably warrant an investigative intrusion. (*People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209, citing *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) In determining whether a *Terry* stop was justified the court inquires whether, given the facts available to the officer at the time, a person of reasonable caution would be-

lieve the action taken to be appropriate. (*People v. Corrigan* (1977), 45 Ill. App. 3d 502, 359 N.E.2d 1107.) A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time. *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921.

 In the case at bar, two police officers, who had been on a routine patrol, were called to investigate a street disturbance at 1:15 a.m. on July 22, 1983. The officers were not given any description of the individuals involved in the disturbance. The officers observed an alley on the block where the disturbance was reported and further observed defendant exit the alley, turn back into the alley and once again exit the alley. Having observed this activity by defendant, the officers exited their car, stopped defendant, identified themselves and asked defendant for identification documents and his purpose for being in the alley. Under these circumstances, we find no violation of the *Terry* standards. Having been instructed to investigate a street disturbance in a high crime area in the early morning hours, and having observed defendant's unusual meandering behavior, in our opinion, an investigatory stop of defendant by the police officers was warranted. In judging whether the police officers had reason to act, we bear in mind that police officers must often proceed upon a quick appraisal of the information before them and are also aware that trained police officers may be able to perceive and articulate meaning in conduct which would be wholly innocent to the untrained observer. See *People v. Herron* (1980), 89 Ill. App. 3d 1048, 411 N.E.2d 592.

Defendant further argues that he was improperly seized under fourth amendment principles when the police officers took him to the police station for a "name check" and to be photographed. The State maintains no seizure of defendant occurred since he consented both to accompanying the police officers to the police station and to being photographed.

 █ It has been determined that a seizure of a person occurs only when, by means of physical force or a show of authority, his freedom of movement is restrained. (*United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870.) The absence of a threatening presence of several officers, display of a weapon, a physical touching, use of language or tone of voice which indicates that compliance with the officer's request might be compelled, permits, as a matter of law, the conclusion that no seizure of the person has taken place. (*Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870; *People v. Thomas* (1985), 139 Ill. App. 3d 163, 486 N.E.2d

1362.) Where consent to accompany and cooperate with police officers is at issue, such consent is a factual matter to be determined in the first instance by the trial court, and the trial court's determination will not be reversed unless clearly unreasonable. *People v. Herron* (1980), 89 Ill. App. 3d 1048, 412 N.E.2d 1365.

In the case at bar, the police officers testified at the evidentiary hearing on defendant's motion to suppress that, upon inquiry, defendant was unable to produce any documents to prove his identity after they stopped him. The officers told defendant that they were curious about him being alone in the alley at such an early hour and stated that they "would appreciate it if [defendant] would accompany [the police officers] to the station where they could run a name check on him." The station was approximately two blocks away. The defendant entered the police officer's undercover vehicle and sat in the backseat alone without being handcuffed. At the police station, defendant responded to the police officers' questions as to his name, address and place of employment. The officers asked defendant if he would submit to having his photograph taken. Defendant consented and requested an additional photograph of himself be taken that he could keep. Defendant was subsequently told that he could leave and he did so. In total, defendant spent approximately 15 minutes in the station.

Our review of this evidence leads us to conclude that the conduct of the police officers here did not rise to a level as to be characterized a violation of fourth amendment principles. While we recognize that mere passive acquiescence to a display of authority is not the equivalent of lawful consent (*People v. Zazzetta* (1963), 27 Ill. 2d 302, 189 N.E.2d 260; *People v. Kelly* (1979), 76 Ill. App. 3d 80, 394 N.E.2d 739), it is our opinion that defendant here exhibited more than mere passive acquiescence. Defendant testified at the evidentiary hearing that he was asked by the officers to go to the police station and did so. There was no testimony of coercion or force by the police officers, the display of a weapon, physical touching or use of a strong tone of voice by the police officers. Further, at no time was the defendant handcuffed or restrained in any manner. At the police station, defendant responded to questions regarding his identity and employment. Defendant was not questioned concerning any criminal activity. After having his picture taken, defendant requested and received an additional picture of himself for his own use. We do not find that the conduct of the police officers constituted an unreasonable detention or intrusion upon defendant's liberty or privacy. In our judgment, any impropriety in defendant's detention was dissipated by his voluntary cooperation with the police. Moreover, we find no evi-

dence in the record to indicate that the detention was in any way related to the crimes for which defendant was eventually convicted, and therefore, any evidence obtained during the detention was not tainted. (*Cf. People v. Shaver* (1979), 77 Ill. App. 3d 709, 396 N.E.2d 643.) A reviewing court will not disturb the trial court's finding on a motion to suppress unless that finding is determined to be manifestly erroneous (*People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766), and we find no error by the trial court in its ruling in the instant case.

## II

Defendant next contends that the introduction of evidence of two burglaries of the victim's apartment that were committed by the defendant subsequent to the crimes for which he was being tried was improper. The State maintains that this evidence was relevant to prove defendant's criminal intent.

While it is well settled that evidence of other crimes is inadmissible merely to establish the defendant's propensity to commit crime (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238), such evidence is relevant to prove *modus operandi*, intent, identity or motive (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200). Subsequent crime evidence is admissible in the same manner as prior crimes evidence where it has independent relevance to an issue in the case (*People v. Rogers* (1975), 31 Ill. App. 3d 981, 335 N.E.2d 48) and when offered on the issue of criminal intent. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.) When evidence of subsequent offenses is not offered to prove the commission of the crime charged, but is offered to prove the presence of criminal intent, mere general areas of similarity between the offense charged and subsequent offenses will suffice. *People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821.

In the case at bar, the evidence at trial revealed that defendant had entered and exited the victim's apartment through a living room window. Two days after the crime, the victim returned to her apartment, found the window that defendant had previously used was open and that a tape player and some jewelry were missing. Approximately two weeks after the crime, the victim again returned to her apartment, found that a porch window was broken and that additional items, including an alarm clock and kitchen knives, were missing. Thereafter, the victim identified jewelry which had been recovered from defendant's bedroom as the jewelry which was taken from her apartment. In addition, when taken to defendant's apartment, the vic-

tim identified several items that had been taken from her both during the instant crime and the two subsequent burglaries. Under these facts, we believe there were sufficient general areas of similarity between the instant offense and the subsequent burglaries for the trial court to allow the evidence of the subsequent crimes to be admitted on the issue of defendant's criminal intent. The perpetrator of all three crimes gained entry to the victim's apartment by climbing through a window. On two occasions the same window was used. All three crimes occurred within a two-week period of time. Further, the items taken in all three robberies were found in defendant's apartment.

## III

Defendant finally argues that comments made by the prosecutor during closing argument were improper and unduly prejudiced him. Specifically, defendant complains that the prosecutor's statement that not a single witness testified that the victim consented to having sex calls attention to the defendant's failure to testify. In addition, defendant complains that the two references to the victim's mother, who was sitting in the courtroom, was an improper plea to the jury's sympathy.

■■ In determining whether certain comments during closing argument warrant reversal and a new trial, the reviewing court must consider whether the comments prejudiced the jury and constituted a material factor leading to a defendant's conviction. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629.) Whether prosecutorial remarks deny the accused a fair trial and require reversal is dependent upon whether the result might have been otherwise had the remarks not been made. (*People v. Love* (1985), 139 Ill. App. 3d 104, 486 N.E.2d 1337.) It is well settled that prosecutors are allowed great latitude in closing arguments. *People v. Ray* (1984), 126 Ill. App. 3d 656, 457 N.E.2d 1078.

■■ In considering the remarks as to whether the victim consented to engage in sexual acts, we note no testimony was admitted during the trial which established that the victim did, in fact, consent. Accordingly, we find the reference to this fact by the prosecutor was permissible to emphasize the uncontradicted nature of the State's case. Further, from our review of the record, we find that in defense counsel's closing argument, he suggested to the jury that defendant had talked the victim into engaging in several sex acts. Clearly this argument was premised on the basis that the victim consented. As such, we deem the prosecutor's remarks on consent were in response

to defense counsel's statement and constituted invited reply. See *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.

■■■ In reviewing the two references by the prosecutor in closing argument to the victim's mother, we likewise find defendant's argument without merit. In order for the comments of a prosecutor concerning the family of a victim to constitute reversible error the comments must dwell on the victim's family and must be of such a nature as would contribute to a guilty verdict. (*People v. Thomas* (1985), 139 Ill. App. 3d 163, 486 N.E.2d 1362.) Here the prosecutor did not dwell in any manner on the victim's family. Moreover, defense counsel's objection to the prosecutor's comments was sustained and the trial court instructed the jury to disregard the comments. In light of the trial court's prompt curative action in sustaining defendant's objection, it is our judgment that the prosecutor's references to the victim's mother could not have been such a material factor in defendant's conviction that the verdict would have been different had the comments not been made. *Thomas*, 139 Ill. App. 3d 163, 486 N.E.2d 1362.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.