611 N.E.2d 1270 (1993)
243 Ill. App.3d 525
183 Ill.Dec. 622
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Samuel BANKS, Defendant-Appellant.
No. 1-91-0063.
Appellate Court of Illinois, First District, Second Division.
March 2, 1993.
*1272 Michael J. Pelletier, Deputy Defender of Illinois, Chicago, for appellant (Manuel S. Serritos, Asst. Defender, of counsel).
Jack O'Malley, State's Atty. of Cook County, Chicago, for appellee (Renee Goldfarb and Linda Woloshin, Asst. State's Attys., of counsel).
Justice SCARIANO delivered the opinion of the court:
Defendant Samuel Banks was indicted for the offenses of aggravated criminal sexual assault, criminal sexual assault, and attempted criminal sexual assault for events occurring on July 5, 1987. A jury convicted him of criminal sexual assault and attempted criminal sexual assault, and he was sentenced to an extended term of 16 years in the custody of the Illinois Department of Corrections.
The following evidence was adduced at trial.[1] On July 4, 1987, Ellen Puff (Ellen), a student at Northwestern University, and her roommate Michelle Conway (Michelle) hosted a party at their apartment. The victim, J.J., and her fiance, Rito, were invited to the party and arrived about 10 p.m. During the party, between the hours of 9 p.m. and 3 a.m., J.J. consumed about 10 glasses of beer.
The party broke up some time after 3 a.m., and about an hour later, Ellen suggested to the remaining guests that they go to the beach for a swim. Ellen, J.J., and Ellen's friend Mike Gallagher (Mike) ultimately decided to go to the beach which was about a ten-minute walk away. As they approached the beach, Ellen and Mike ran far ahead of J.J. and decided to skinny dip, so they took off their clothes and swam far into Lake Michigan. When J.J. finally arrived at the beach, she heard Ellen and Mike in the lake; however, as the two swam farther out, she lost contact with them. J.J. then took off her sandals and walked along the beach and into the water. At some point, she decided to go a bit farther into the water to try to reach Ellen and Mike. In order to keep her dress dry while doing so, J.J. took it off and put it on the beach. Wearing only her underwear and brassiere, she waded into the water until it was slightly above her knees, but when she still could not see or hear Ellen and Mike, J.J. decided to get out of the lake and try to find her way back to Ellen's apartment.
As J.J. turned back toward the beach, she saw defendant between her and the place where her clothes were located on the beach. J.J. began to run towards the beach, but defendant grabbed her by the arm and she fell into the water. She tried to resist defendant, but he repeatedly dunked her head under the water so that she was unable to breathe. Fearing for her life, J.J. decided to stop resisting defendant. She asked him what he wanted, and he told her to "love me or suck me." Defendant then opened his pants, pushed J.J.'s head down, and forced her to perform fellatio on him. After J.J. performed oral sex on defendant, he removed her underwear and tore off her bra, scraping her skin. Defendant then performed oral and vaginal sex on her. All the while, J.J. tried to calm defendant by talking to him, and he told her that his name was Carl, that he was a drummer, and that he had three children.
After the assault, J.J. exited the water and dressed. As she walked back to Ellen's home with defendant at her side, J.J. saw two police cars in the distance, and she subtly waived her left arm up and down in an attempt to signal them. Defendant, however, grabbed her arm and pulled her to the other side of the street. Eventually, J.J. could no longer see the police cars, and she began to yell at defendant, asking him "how could you do this?"
Meanwhile, Michelle and others back at the apartment became worried as to the whereabouts of Ellen, Mike and J.J.; therefore, Michelle, Rito and two others, Dora and Claudio, began to search for the three. They found Ellen and Mike, who were walking back from the lake. Ellen and Mike told them, however, that they did not know where J.J. was. The group then returned *1273 to the apartment and split up to search for her.
As Michelle and Claudio drove south on Foster Avenue, Michelle saw police cars near a light pole which had been knocked down. Claudio asked the officers if they had seen J.J., and they replied that she might be east on Sheridan Road near the lake. Michelle drove in that direction and saw J.J. and defendant from about 200 yards away. As Michelle drove up to the two, she heard defendant say to J.J., "I love you. I'll never forget you." Defendant then walked quickly through the Northwestern University campus.
J.J. entered the back seat of Michelle's car and immediately curled up in a fetal position and began to cry. Michelle asked her what was wrong, and J.J. told her, "I've been raped." Soon thereafter, a police car pulled around the corner, and Michelle sounded the car horn. Because J.J. had not yet composed herself, Michelle explained to the police officer what had happened to J.J. Michelle also told the officer that the man she had seen next to J.J. was 5'5" to 5'6", 150 pounds, had short hair and a short beard, and was wearing blue jeans and an open, shortsleeved blue shirt. After the officer helped J.J. into the back seat of the squad car, she described her attacker as about 5'5" and 150 pounds.
The officer then took J.J. to the emergency room at Evanston Hospital where she was treated by Bonnie Rich, R.N. J.J. told her that she had been forced to engage in oral and vaginal intercourse with defendant and that he had dunked her repeatedly in the lake. J.J. had abrasions on the side of her neck and on her knees, a bruise on her arm, mottled skin, and was pale with blue blotches.
After being treated at the hospital, J.J. went to the police station where she spoke with detectives to whom she repeated her description of the assailant, adding that he had a medium to dark complexion. The detectives showed her a series of photographs, and she immediately picked defendant's photo from the array, indicating that his beard was shorter than shown in the picture. Michelle also selected defendant's picture from that same array of photographs. Based on that information, the detectives obtained a warrant for defendant's arrest and apprehended him in January of 1988.
As noted above, the jury found defendant guilty of criminal sexual assault and attempted criminal sexual assault, but not guilty of aggravated criminal sexual assault. The order entered by the trial court, however, states that the defendant was found guilty of all three offenses.
In his post-trial motion, defendant argued, inter alia, that the prosecutor used his peremptory challenges purposefully to exclude African-Americans as jurors in violation of Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. After hearing oral argument on the Batson issue, the court denied defendant's motion, finding that the prosecutor did not exercise his peremptory challenges in a racially discriminatory manner. Finally, after hearing testimony on aggravation and mitigation, the court sentenced defendant to 16 years' in the custody of the Illinois Department of Corrections.
Defendant appeals his conviction, claiming that his right to equal protection under the law under Batson was violated because the State intentionally used its peremptory challenges to exclude African-Americans from the jury, and that the prosecutor, during his rebuttal argument, improperly commented on his failure to testify.

I.
As to his Batson claim, the State asserts that defendant waived this issue for purposes of appeal because he did not object to the jurors' having been excluded by the prosecutor before they were sworn, and that even if the issue was not waived, the trial court correctly determined that the prosecutor did not exclude potential jurors on the basis of race.

A.
The State's waiver argument is unavailing. It is true that our supreme court has repeatedly held that a defendant's failure *1274 to object to a prosecutor's use of peremptory challenges before the jury is sworn results in a waiver of that claim. (People v. Pecor (1992), 153 Ill.2d 109, 118-119, 180 Ill.Dec. 50, 55-56, 606 N.E.2d 1127, 1132-1133; People v. Henderson (1990), 142 Ill.2d 258, 283, 154 Ill.Dec. 785, 797, 568 N.E.2d 1234, 1246; People v. Andrews (1989), 132 Ill.2d 451, 458, 139 Ill. Dec. 469, 472, 548 N.E.2d 1025, 1028; People v. Evans (1988), 125 Ill.2d 50, 61-62, 125 Ill.Dec. 790, 794, 530 N.E.2d 1360, 1364.) The cited cases reason that "requiring a timely objection before the jury has been sworn and the venire dismissed allows a trial court to conduct a hearing while the chosen and stricken venirepersons are still present and before trial has begun." See e.g., Andrews, 132 Ill.2d at 458, 139 Ill.Dec. at 472, 548 N.E.2d at 1028.
The State's argument is untenable, however, because our supreme court has consistently held in the Batson context that the doctrine of waiver applies to the State as well as to the defendant (see, e.g., Andrews, 132 Ill.2d at 458, 139 Ill.Dec. at 472, 548 N.E.2d at 1028), and that therefore where the defendant raises a Batson claim at the trial level, and the State argues the merits of the claim without objecting to its timeliness, the State cannot assert that the Batson claim is waived on appeal. Henderson, 142 Ill.2d at 283, 154 Ill.Dec. at 797-98, 568 N.E.2d at 1246-47; Andrews, 132 Ill.2d at 458, 139 Ill.Dec. at 472, 548 N.E.2d at 1028; People v. Harris (1989), 129 Ill.2d 123, 171, 135 Ill.Dec. 861, 882, 544 N.E.2d 357, 378.
In the case at bar, the State did not object to the timeliness of defendant's Batson claim before arguing its merits at the post-trial stage. Accordingly, we find that the State waived its waiver argument; we thus reach the merits of defendant's Batson claim.

B.
Prior to the United States Supreme Court's decision in Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, a defendant could obtain a reversal of his conviction because of a racially discriminatory jury selection only by establishing a systematic and purposeful pattern of excluding venire members on the ground of race in "case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be." (Swain v. Alabama (1965), 380 U.S. 202, 223, 85 S.Ct. 824, 837, 13 L.Ed.2d 759, 774.) Batson, however, expressly overruled Swain and held that a defendant could establish a case of racial discrimination in the selection of his jury solely on evidence concerning the prosecutor's use of peremptory challenges at the defendant's trial. Batson, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87.
Batson established a two-step procedure for the resolution of a defendant's claim that the prosecution used its peremptory challenges in a discriminatory manner. First, the defendant must establish a prima facie case of purposeful discrimination in the selection of his jury, and if he or she succeeds in presenting such a case, the burden then shifts to the State to come forth with a race-neutral explanation for challenging each of the venirepersons. Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 87-88.

C.
In the case at bar, defendant first raised the Batson issue in his post-trial motion. The State led off in oral argument on the issue, in which it contended that defendant could not make out a prima facie case of racial discrimination. Defense counsel then responded:
"We have three persons who are in the venire who share racial identity with that of the defendant. And of those two of them are excluded from the jury.
The State has taken the position that they don't have to provide us with a racially neutral reason for them having been excluded. And therefore the Court is left with no racially neutral reason for them having done that."
The trial court then stated:
"While I always presume everybody, lawyers on both sides are acting properly within the appropriate guidelines of the *1275 law, I believe that the dictates of Batson pursuant to the facts in this case requires [sic] the State to give a racially neutral reason. So I will invite the State to do so at the present time before you go on."
The State, in response to this "invitation" by the trial court, proceeded to articulate race-neutral explanations for its exclusion of the potential jurors in question, but before doing so, the prosecutor stated for the record that he felt that it was unnecessary for him to do so because no ruling had been made on the prima facie showing. Nevertheless, the court heard argument from both sides regarding the State's race-neutral explanations for excluding the African-American venirepersons. The court accepted those reasons and held that no Batson violation occurred.
The trial court clearly did not follow the proper procedure for making a Batson inquiry. Our supreme court has consistently held that a trial court may not "telescope" the two phases of the Batson inquiry indiscriminately instead of first expressly determining whether defendant has made a prima facie showing of racial discrimination before requiring the State to come forward with race-neutral explanations for its peremptory challenges of African-Americans. (People v. Garrett (1990), 139 Ill.2d 189, 201, 151 Ill.Dec. 329, 334-35, 564 N.E.2d 784, 789-90; People v. Hope (1990), 137 Ill.2d 430, 456, 148 Ill.Dec. 252, 263, 560 N.E.2d 849, 860, vacated on other grounds, (1991), ___ U.S. ___, 111 S.Ct. 2792, 115 L.Ed.2d 966, modified on reh'g (1992), 147 Ill.2d 315, 168 Ill.Dec. 103, 589 N.E.2d 503; accord People v. Coulter, 230 Ill.App.3d 209 at 223, 171 Ill.Dec. 643 at 652, 594 N.E.2d 1163 at 1172.) By "collapsing what ought to be a methodical Batson hearing procedure into an undifferentiated review of defense and State contentions" (Garrett, 139 Ill.2d at 201, 151 Ill.Dec. at 334-35, 564 N.E.2d at 789-90), the trial court in this case plainly failed to determine expressly whether defendant had made out a prima facie case of discrimination.
Defendant, however, argues that the question of whether he has established a prima facie case in this instance is moot because the prosecutor offered race-neutral explanations for his peremptory challenges before the court made a finding on the prima facie question. We agree. The United States Supreme Court has recently pronounced that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." (Hernandez v. New York (1991), 500 U.S. ___, ___, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 405; accord People v. Mitchell (1992), 152 Ill.2d 274, 289, 178 Ill.Dec. 354, 363, 604 N.E.2d 877, 886; People v. Banks (1993), 241 Ill.App.3d 966, 972, 182 Ill.Dec. 330, 334-35, 609 N.E.2d 864, 868-69). Accordingly, we proceed to review the trial court's determination that the prosecutor provided sufficient race-neutral explanations for his peremptory challenges.

D.
Once a defendant has established a prima facie case of racial discrimination, the burden shifts to the State to articulate a race-neutral explanation for each peremptory challenge to which the defendant objects. (Batson, 476 U.S. at 93-94, 106 S.Ct. at 1721, 90 L.Ed.2d at 85-86; Hope, 137 Ill.2d at 453, 148 Ill.Dec. at 262, 560 N.E.2d at 859.) Although the prosecutor's race-neutral explanations must be clear, reasonably specific, and legitimate (Mitchell, 152 Ill.2d at 291, 178 Ill.Dec. at 364, 604 N.E.2d at 887), they need not rise to the level of a challenge for cause. (Mitchell, 152 Ill.2d at 291, 178 Ill.Dec. at 364, 604 N.E.2d at 887; Harris, 129 Ill.2d at 174, 135 Ill.Dec. at 883, 544 N.E.2d at 379.) Furthermore, the prosecutor's explanations must be subjectively neutral, since any other conclusion would render the peremptory challenge meaningless. (People v. Kindelan (1991), 213 Ill.App.3d 548, 555, 157 Ill.Dec. 674, 678, 572 N.E.2d 1138, 1142, appeal denied, (1991), 141 Ill.2d 552, 162 Ill.Dec. 500, 580 N.E.2d 126.) However, a mere assertion *1276 by the prosecution that it acted in good faith or without discriminatory motive is insufficient. Mitchell, 152 Ill.2d at 291, 178 Ill.Dec. at 364, 604 N.E.2d at 887; Harris, 129 Ill.2d at 174, 135 Ill.Dec. at 883, 544 N.E.2d at 379.
Once the State has offered its race-neutral explanations, it is incumbent on the trial court to make a sincere and reasoned attempt to evaluate whether those explanations are genuine, legitimate and race-neutral. (Hope, 137 Ill.2d at 454, 148 Ill.Dec. at 262, 560 N.E.2d at 859; People v. Baisten, (1990), 203 Ill.App.3d 64, 77, 148 Ill.Dec. 463, 471, 560 N.E.2d 1060, 1068.) A trial court's determination as to the validity of the State's race-neutral explanations is a matter of fact, involving an evaluation of credibility, and will thus be entitled to great deference on appeal; accordingly, a trial court's decision will only be reversed if it is against the manifest weight of the evidence. (Mitchell, 152 Ill.2d at 288-89, 178 Ill.Dec. at 363, 604 N.E.2d at 886.) The State's explanation for its challenge of each African-American venireperson must be reviewed because the exclusion of even one venireperson on the basis of race is constitutionally infirm. Harris, 129 Ill.2d at 175, 135 Ill.Dec. at 884, 544 N.E.2d at 380.
In the case at bar, the trial court accepted the prosecutor's race-neutral explanations for his excluding the African-American venirepersons in question, Katherine Wallace (Wallace) and Josephine McCarthy (McCarthy), thus rejecting defendant's Batson claim. Defendant complains that this determination was against the manifest weight of the evidence.
The prosecutor's proffered reasons for excluding Wallace were that: (1) her son had been shot when he was 13 years old; (2) she belonged to a citizens alert group which advocates for victims of alleged police misconduct; and (3) her responses to questions during voir dire indicated that because of the aforementioned factors, she would have some difficulty being fair to the State. Defendant argues that these were illegitimate justifications for excluding Wallace because other potential jurors who were not challenged by the State also expressed some distrust or ill will toward the police.
Defendant's argument is unpersuasive. First, it is clear that none of the other venirepersons to which defendant makes reference had anywhere near the potential bias against police officers as did Wallace. Second, and even more conclusively, our supreme court has rejected defendant's precise argument, stating:
"The defendant argues that because the prosecutor did not exercise peremptory challenges to excuse white jurors on the same basis that he exercised them against black jurors, it must be assumed that the prosecution's explanations were merely a pretext to hide a racial motivation for the strikes. What the defendant argues should not be lightly dismissed. We must keep in mind, however, the nature of the peremptory challenge and the inherent problems involved in a hearing of this character. If the prosecutor excused one person and not another its does not follow that this in itself shows that the prosecutor's explanations were pretextual.
Though a part of the prosecutor's explanations may have been applicable to white jurors who were not challenged, the white jurors may have, in some other respect, exhibited a trait which the prosecutor reasonably believed would make him or her desirable as a juror." People v. Young (1989), 128 Ill.2d 1, 23-24, 131 Ill.Dec. 78, 84, 538 N.E.2d 453, 459; accord Harris, 129 Ill.2d at 179-80, 135 Ill.Dec. at 886, 544 N.E.2d at 382.
With respect to McCarthy, the State offered the following reasons for excluding her: (1) she was employed at a religious institution, namely the Moody Bible Institute; (2) she may have been a party to a lawsuit at the time of the trial; and (3) she lacked eye contact with the prosecutor and gave casual responses to questions asked. Although defendant asserts that these explanations are pretextual, the trial court determined otherwise, and courts in this State have found the above-mentioned reasons for excluding potential *1277 jurors to be valid race-neutral ones. See Young, 128 Ill.2d at 22, 131 Ill.Dec. at 83, 538 N.E.2d at 458 (juror's demeanor proper basis for challenging juror); Baisten, 203 Ill.App.3d at 80, 148 Ill.Dec. at 473, 560 N.E.2d at 1070 (same); People v. Mack (1989), 128 Ill.2d 231, 131 Ill.Dec. 551, 538 N.E.2d 1107 (concern with employment position valid race-neutral reason for excluding potential juror); Kindelan, 213 Ill. App.3d at 557, 157 Ill.Dec. at 679, 572 N.E.2d at 1143 (same).
In sum, we conclude that defendant has failed to establish a Batson violation for the reason that the trial court's acceptance of the State's race-neutral explanations for its peremptory challenges was not against the manifest weight of the evidence.

II.
Defendant next maintains that the prosecutor violated his right not to testify by improperly commenting during his rebuttal argument on the fact that defendant did not take the witness stand at his trial. The State counters that the comments to which the defendant objects were invited by defense counsel's closing argument.
Defense counsel made the following comments during his closing argument:
"We all know that of all those [State] witnesses only one person has firsthand knowledge of what happened in the early morning hours. That person of course is [J.J.].
* * * * * *
When we get to [J.J.], all of the State's witnessesshe is the only person that can provide you with first-hand information about what happened in the early morning hours of July 5, 1987."
In response to these comments, the assistant State's Attorney argued:
"I disagree with one other thing she [defense counsel] said. [That] [t]here was only one person who knows what took place on the beach in the morning hours. Two people, Mr. Banks knows what took place."
A defendant has the right not to testify as a witness in his own behalf, and, in order to ensure the efficacy of this right, the prosecutor is forbidden to make direct or indirect comment on the exercise of it. (Griffin v. California (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; People v. Arman (1989), 131 Ill.2d 115, 126, 137 Ill.Dec. 5, 10, 545 N.E.2d 658, 663.) In determining whether a prosecutor has improperly commented on a defendant's failure to testify, a court must consider "whether the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." (People v. Dixon (1982), 91 Ill.2d 346, 350, 63 Ill.Dec. 442, 445, 438 N.E.2d 180, 183; accord Arman, 131 Ill.2d at 126, 137 Ill.Dec. at 10, 545 N.E.2d at 663.) In making that determination, a reviewing court should examine the challenged comments in the context of the entire proceeding. Arman, 131 Ill.2d at 126, 137 Ill.Dec. at 10, 545 N.E.2d at 663.
We agree with defendant that comments similar to those made by the prosecutor have been held to be improper under certain circumstances. (People v. Thomas (1980), 89 Ill.App.3d 592, 601-02, 44 Ill.Dec. 710, 718, 411 N.E.2d 1076, 1084; People v. Connors (1980), 82 Ill.App.3d 312, 321, 37 Ill.Dec. 771, 778, 402 N.E.2d 773, 780; People v. Edwards (1979), 77 Ill.App.3d 237, 242-44, 32 Ill.Dec. 714, 717-18, 395 N.E.2d 1095, 1098-99.) Those instances are inapplicable here, however, since it is well settled that a defendant cannot claim error where the prosecutor's remarks are invited by defense counsel's closing argument. (People v. Richardson (1988), 123 Ill.2d 322, 356, 123 Ill.Dec. 908, 921, 528 N.E.2d 612, 625; People v. Johnson (1986), 114 Ill.2d 170, 201, 102 Ill.Dec. 342, 356, 499 N.E.2d 1355, 1369; Dixon, 91 Ill.2d at 346-47, 63 Ill.Dec. at 445, 438 N.E.2d at 183, see People v. Moore (1991), 215 Ill.App.3d 836, 843, 159 Ill.Dec. 977, 982, 576 N.E.2d 900, 905.) It is also well established that the prosecutor may comment on the uncontradicted nature of the evidence. People v. Howard (1991), 147 Ill.2d 103, 147, 167 Ill.Dec. 914, 932, 588 N.E.2d 1044, 1062; People v. Barrow *1278 (1990), 133 Ill.2d 226, 268, 139 Ill.Dec. 728, 747, 549 N.E.2d 240, 259.
The case at bar is on all fours with People v. DeHoyos (1988), 172 Ill.App.3d 1087, 122 Ill.Dec. 821, 527 N.E.2d 319, appeal denied, (1988), 122 Ill.2d 582, 125 Ill. Dec. 225, 530 N.E.2d 253. In that case, the defendant complained that the prosecutor's comment that not a single witness testified that the victim consented to have sex with the defendant was improper. The court rejected this argument, stating:
"In considering the remarks as to whether the victim consented to engage in sexual acts, we note that no testimony was admitted during the trial which established that the victim did, in fact, consent. Accordingly, we find the reference to this fact by the prosecutor was permissible to emphasize the uncontradicted nature of the State's case. Further, from our review of the record, we find that in defense counsel's closing argument, he suggested to the jury that defendant had talked the victim into engaging in several sex acts. Clearly this argument was premised on the basis that the victim consented. As such, we deem the prosecutor's remarks on consent were in response to defense counsel's statement and constituted invited reply. [Citation.]" DeHoyos, 172 Ill.App.3d at 1095, 122 Ill.Dec. at 827, 527 N.E.2d at 325.
We find defendant's claim of error to be baseless because the prosecutor's comment was clearly invited by defendant's attorney's closing argument. Defense counsel, in trying to establish defendant's consent defense, plainly attempted to discredit J.J.'s testimony by arguing that she was the only one who knew what had occurred on the beach. The prosecutor simply corrected this misstatement by pointing out that the defendant was also at the scene of the crime, a fact defense counsel admitted in her argument, and thus that he knew as well what actually had happened that night. Accordingly, we find no error in the prosecutor's rebuttal argument.

III.
Both parties agree that the trial court's judgment order erroneously states that defendant was convicted of aggravated criminal sexual assault. Therefore, we vacate defendant's conviction for aggravated criminal sexual assault, and we affirm his convictions for criminal sexual assault and attempted criminal sexual assault.
Affirmed in part, vacated in part.
HARTMAN and DiVITO, JJ., concur.
NOTES
[1] This was actually defendant's second trial, his first having ended in a hung jury.