**SECOND DIVISION**
**September 12, 2006**

No. 1-04-3545

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF ILLINOIS,** | **A**ppeal from the **C**ircuit **C**ourt of **C**ook **C**ounty. |
| **P**laintiff-**A**ppellee, | |
| v. | |
| **PHILLIP MORRISON,** | **H**onorable **V**ictoria **S**tewart, **J**udge **P**residing. |
| **D**efendant-**A**ppellant. | |

**JUSTICE SOUTH** delivered the opinion of the court

This appeal arises from the conviction of defendant, Phillip Morrison, of possession of a controlled substance following a bench trial. Defendant was sentenced to two years in prison and ordered to pay $1,274 in various fees and fines.

The testimony presented at trial was brief. Officer Prieto testified that on the evening of April 12, 2004, he was on routine patrol in a marked police vehicle in the vicinity of 6844 South Ada Street. Around 10:40 p.m., he observed defendant engaged in an argument with another man in the middle of the street. He approached defendant for a field interview and learned his name. Officer Prieto ran a name check from his police car, discovered an outstanding warrant for defendant's arrest on a conditional discharge violation, and placed him under arrest. He performed a custodial search at the scene and recovered a plastic pill bottle containing suspected crack cocaine, which he inventoried. On cross-examination, he denied defendant voluntarily surrendered the bottle.

1-04-3545

The parties entered into a stipulation as to the chain of custody of the pill bottle inventoried by Officer Prieto and that it contained less than 0.1 grams of cocaine.

Defendant testified that before his arrest he had been on a Chicago Transit Authority bus where he found a pill capsule bottle. He did not know what was inside the bottle and never opened it. After exiting the bus, he walked about a half a block before being approached by Officer Prieto. At that time, he gave the pill bottle to Officer Prieto.

In rebuttal, the State introduced evidence of defendant's three prior convictions for possession of a controlled substance.

The trial court found defendant guilty of possession of a controlled substance and sentenced him to two years in prison. The trial court entered a separate order "assessing fines, fees, and costs" with the following boxes marked:

> " Costs and Fees
>
>> Felony Complaint Filed-Clerk - *** $190
>>
>> Felony Complaint Conviction - State's Attorney *** $60
>>
>> Preliminary Hearing - State's Attorney *** $20
>>
>> ***
>>
>> State DNA ID System- Felony Offenses Only *** $200
>>
>> Violent Crime Victim Assistance *** $20
>>
>> ***
>>
>> Criminal/Traffic Conviction Surcharge-Additional Penalty
>>
>> *** $4

1-04-3545

> Automation - Clerk - *** $5
>
> Document Storage - Clerk - *** $5
>
> Court Services - Sheriff - *** $15
>
> ***

Controlled Substance/Cannabis/Hypodermic Needles Offenses

> ***
>
> Assessment Controlled Substance *** $500
>
> ***
>
> Crime Lab Drug Analysis - State *** $100
>
> ***
>
> Trauma Fund *** $100
>
> Trauma Fund Spinal Cord *** $5
>
> ***

Fees

> Per Day of Trial - State's Attorney *** $50

Total                                   $1274"

Defendant has raised the following issues for our review: (1) whether he was denied effective assistance of counsel because his attorney failed to file a motion to quash arrest and suppress evidence; (2) whether he was denied a fair trial because there was no indication in the record that he waived his constitutional right to confrontation before his attorney stipulated to the chain of custody; (3) whether the statute mandating that persons convicted of a drug-related offense be assessed a $5 fee for deposit into the Spinal Cord Injury Paralysis Cure Research Trust Fund violated his substantive due

process rights; and (4) whether the trial court failed to award him proper presentence credit for the fines he was ordered to pay, improperly imposed a fine for the Violent Crimes Victims Assistance Fund, and failed to consider his financial status before ordering him to pay.

We first consider defendant's claim that he was denied effective assistance of counsel because his attorney failed to file a motion to quash arrest and suppress evidence. Defendant argues that even if Officer Prieto's observation of the disturbance was enough to constitute the reasonable suspicion required for a brief investigatory stop, there was no basis to prolong the detention by asking him to identify himself and running a name check.

Under the two-part test for judging ineffective assistance of counsel claims, a defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness and the shortcomings of counsel were so severe as to deprive defendant of a fair trial; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. People v. Rodriguez, 312 Ill. App. 3d 920, 925 (2000), citing Strickland v. Washington, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984). When considering an ineffective assistance claim, a reviewing court must look to counsel's total performance and not focus solely on isolated acts. People v. Williams, 305 Ill. App. 3d 517, 529 (1999).

The decision whether to bring a motion to quash arrest or to suppress evidence is considered to be a matter of trial strategy, and defense counsel enjoys the strong presumption that the failure to challenge the validity of the defendant's arrest or to move to suppress evidence was proper. Rodriguez, 312 Ill. App. 3d at 925. " 'Only the most egregious of tactical or strategic blunders may provide a basis for a violation of a defendant's right to effective assistance of counsel.' " People v. Penrod, 316 Ill. App. 3d 713, 724 (2000), quoting People v. Davis, 228 Ill. App. 3d 123, 127 (1992). In order to prevail on a claim that defense counsel was ineffective

for failing to file a motion to suppress the evidence, defendant bears the burden of showing that there was a reasonable probability that the motion would have been granted and, with respect to the suppression of evidence, that the outcome of the trial would have been different had the evidence been suppressed. People v. Kelley, 304 Ill. App. 3d 628, 636 (1999). The failure to satisfy either the deficient performance prong or the prejudice prong of Strickland precludes a finding of ineffective assistance of trial counsel. People v. Patterson, 217 Ill. 2d 407, 438 (2005).

The fourth amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "The central inquiry under the fourth amendment is ' "the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security." ' " People v. Conner, 358 Ill. App. 3d 945, 949 (2005), quoting Michigan v. Summers, 452 U.S. 692, 700 n.11, 69 L. Ed. 2d 340, 348 n.11, 101 S. Ct. 2587, 2593 (1981), quoting Terry v. Ohio, 392 U.S. 1, 19, 20 L. Ed. 2d 889, 904, 88 S. Ct. 1868, 1878-79 (1968).

The United States Supreme Court provided for a limited exception in Terry, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, where it held that a police officer, under appropriate circumstances, could detain a person for investigatory purposes. People v. Flowers, 179 Ill. 2d 257, 262 (1997). Under a Terry stop, a police officer may stop a person briefly for temporary questioning if the officer reasonably believes that the person has committed, or is about to commit, a crime. Terry, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880. "To ensure that the resulting seizure is constitutionally reasonable, a Terry stop must be limited. The

officer's actions must be ' "justified at its inception, and \*\*\* reasonably related in scope to the circumstances which justified the interference in the first place." ' [Citation.]" Hiibel v. Sixth Judicial District Court of Nevada, 542 U.S. 177, 185, 159 L. Ed. 2d 292, 302, 124 S. Ct. 2451, 2458 (2004).

The Illinois Supreme Court "has recognized that police-citizen encounters can be divided into three tiers: (1) the arrest of a citizen which must be supported by probable cause; (2) a 'Terry stop' which must be supported by a reasonable, articulable suspicion of criminal activity [citation]; and (3) a 'community caretaking function,' which need not be supported by probable cause or reasonable suspicion." People v. White, 221 Ill. 2d 1, 21 (2006).

We disagree with defendant's apparent belief that Officer Prieto was exercising a community caretaking function when he approached him, learned his name, and ran the name check. Officer Prieto testified that while on routine patrol he observed a disturbance around 10:40 p.m. in the middle of a city street involving defendant and another man. See 720 ILCS 5/26-1 (West 2004) (a person commits disorderly conduct when he knowingly does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace). We find the circumstances of this case were sufficient to warrant a Terry stop. See People v. DeHoyos, 172 Ill. App. 3d 1087, 1092 (1988) (where a police officer who was called to investigate a street disturbance while on routine patrol, who was not given any description of the individuals involved in the disturbance, and who later observed the defendant exit an alley, and then turn back into the alley, was justified in conducting a brief investigatory stop to determine the defendant's identification and why he was in the alley).

1-04-3545

It is unclear exactly how Officer Prieto obtained defendant's name because he testified that he learned it after approaching defendant for a field interview. We will assume for purposes of our analysis that he asked defendant for this information and that defendant did not volunteer it. However, "it is well established that an officer may ask a [person] to identify himself in the course of a Terry stop." Hiibel, 542 U.S. at 186, 159 L. Ed. 2d at 303, 124 S. Ct. at 2458. The United States Supreme Court has made "clear that questions concerning a suspect's identity are a routine and accepted part of many Terry stops." Hiibel, 542 U.S. at 186, 159 L. Ed. 2d at 302, 124 S. Ct. at 2458, citing United States v. Hensley, 469 U.S. 221, 229, 83 L. Ed. 2d 604, 612, 105 S. Ct. 675, 680 (1985) (the ability to briefly stop a suspect, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice); Hayes v. Florida, 470 U.S. 811, 816, 84 L. Ed. 2d 705, 711, 105 S. Ct. 1643, 1647 (1985) (if there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information); Adams v. Williams, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923 (1972) (a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officers at the time). Consequently, we find it was proper for Officer Prieto to ask defendant for his name.

Having determined that the initial Terry stop was justified, and that Officer Prietro's inquiry as to defendant's name was proper, we next consider the reasonableness of the duration

1-04-3545

of the stop. A seizure that is lawful at its inception can violate the fourth amendment if it is prolonged beyond the time reasonably required to complete the mission. Illinois v. Caballes, 543 U.S. 405, 407, 160 L. Ed. 2d 842, 846, 125 S. Ct. 834, 837 (2005). The officer's questioning of defendant and the subsequent name-search were not impermissibly prolonged and we infer from the record it lasted only a few minutes. Consequently, we conclude there was no fourth amendment violation for an unlawful seizure in this case, and once Officer Prieto discovered the outstanding warrant for defendant's arrest, he was justified in arresting him and conducting the custodial search.

Defendant's reliance upon People v. Gherna, 203 Ill. 2d 165 (2003), and People v. Brownlee, 186 Ill. 2d 501 (1999), is misplaced. In contrast to the instant case, the police officers in both those cases violated the defendants' fourth amendment rights because the extended detentions were unreasonable and exceeded the officers' Terry authority. Gherna, 203 Ill. 2d at 186-87; Brownlee, 186 Ill. 2d at 521. We are also unpersuaded by defendant's reliance on People v. Torres, 347 Ill. App. 3d 252 (2004). As we explained in Connor, the Torres court relied exclusively on People v. Harris, 207 Ill. 2d 515 (2003), in concluding that the warrant check of a passenger during a lawful traffic stop was unreasonable. Connor, 358 Ill. App. 3d at 961. Due to the fact that the United States Supreme Court vacated and remanded the Harris decision in light of Illinois v. Caballes, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005), the Torres holding is questionable and, like the Connor court, we decline to follow it. Connor, 358 Ill. App. 3d at 961.

We conclude defendant was not prejudiced by his attorney's failure to file a motion to

˘ 8 ˘

quash arrest and suppress evidence because it would not have had a reasonable likelihood of success. Also, we reject defendant's claim that the cumulative effect of his attorney's deficient performance denied him effective assistance of counsel. Even assuming the alleged errors of failing to make an opening statement, and not filing any posttrial motions, constituted deficient performance, taken cumulatively, they do not amount to prejudice in light of the significant evidence of defendant's guilt. People v. Ward, 187 Ill. 2d 249, 263 (1999). Consequently, defendant has not met his burden of showing that he received ineffective assistance of counsel.

Next, there is no need for us to address defendant's claim that he was denied a fair trial because the record fails to show that he affirmatively waived his constitutional right to confrontation before defense counsel stipulated to the chain of custody. In his reply brief, defendant withdrew this issue for our review in light of People v. Phillips, 217 Ill. 2d 270 (2005).

Next, defendant contends that his due process rights were violated by the trial court's imposition of a $5 fee for deposit into the Spinal Cord Injury Paralysis Cure Research Trust Fund (Spinal Cord Fund) (730 ILCS 5/5-9-1.1(c) (West 2004)). Defendant contends that collecting a $5 fee from drug offenders violates his substantive due process rights because there is no rational relationship between the possession of a controlled substance and the public interest that led the legislature to create the Spinal Cord Fund.

We addressed this identical issue in People v. Fort, 362 Ill. App. 3d 1 (2005), where the defendant was also convicted of possession of a controlled substance. There, we concluded the imposition of the $5 fee was a violation of the defendant's substantive due process rights. Fort,

362 Ill. App. 3d at 10. We reached this conclusion after finding the relationship between possession of a controlled substance and the Spinal Cord Fund too attenuated to survive the defendant's substantive due process challenges. Fort, 362 Ill. App. 3d at 10; see also People v. Rodriquez, 362 Ill. App. 3d 44, 55 (2005). We see no reason to reconsider our holding in Fort and, accordingly, strike from the trial court's order the requirement that defendant pay the $5 fee to the Spinal Cord Fund.

Next, we consider defendant's contention that we should reduce the total amount he was assessed because the trial court failed to award him presentence credit toward the $500 drug assessment and the $4 conviction surcharge. Defendant also claims the trial court improperly imposed a $20 fine for the Violent Crime Victims Assistance Fund. If we conclude the trial court properly imposed either the $4 conviction surcharge or the $20 fine, defendant requests that we remand for the trial court to conduct a hearing to determine his ability to pay.

As a threshold matter, we note that the normal rules of forfeiture do not apply to a sentence credit request and may be raised by a defendant for the first time on appeal. Fort, 362 Ill. App. 3d at 4, citing People v. Woodward, 175 Ill. 2d 435, 457 (2005).

Section 110-14 of the Code of Criminal Procedure of 1963 (Code) provides, in relevant part:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no

1-04-3545

case shall the amount so allowed or credited exceed the amount of

the fine."  725 ILCS 5/110-14 (West 2004).

In this case, the charged offense of possession of a controlled substance was bailable

(725 ILCS 5/110-4(a) (West 2004)), and the record establishes that defendant served 186 days in

jail prior to his sentencing.  Consequently, he was entitled under section 110-14 of the Code to a

credit of $930, which was not to exceed the amount of the fine.

In Fort, the defendant was also ordered to pay the $500 drug assessment, pursuant to

section 411.2(a)(4) of the Illinois Controlled Substances Act (720 ILCS 570/411.2(a)(4) (West

2002)), and argued on appeal that he was entitled to a credit against this amount for the days he

spent in presentence incarceration.  Fort, 362 Ill. App. 3d at 3-4.  We looked to the legislative

intent in order to determine whether the $500 assessment was a fine, *i.e.*, a pecuniary punishment

imposed as part of a sentence, or if it was a charge taxed by a court, compensatory in nature,

such as a fee or court cost.  Fort, 362 Ill. App. 3d at 4.  We ultimately concluded, relying upon a

consistent line of appellate court decisions, that the $500 assessment was in the nature of a fine

and, therefore, would be offset by the credit earned by the defendant for the days he spent in jail

prior to his sentencing.  Fort, 362 Ill. App. 3d at 8; see also People v. Youngblood, 365 Ill. App.

3d 210 (2006); People v. McNeal, 364 Ill. App. 3d 867 (2006).

We decline the State's request to reconsider our holding in Fort that the $500 drug

assessment was a fine and conclude that defendant is entitled, in accordance with that decision,

to a full credit based upon the length of his presentence incarceration.

We now turn to defendant's claim that he was entitled, under section 110-14 of the Code,

1-04-3545

to a credit of $4 against the fine imposed for the Traffic and Criminal Conviction Surcharge Fund (730 ILCS 5/5-9-1(c-9) (West 2004)).

Section 5-9-1(c-9) of the Unified Code of Corrections provides, in relevant part:

> "There shall be added to every fine imposed in sentencing for a criminal or traffic offense *** an additional penalty of $4 imposed. *** The State Treasurer shall deposit the additional penalty of $4 into the Traffic and Criminal Conviction Surcharge Fund. The additional penalty of $4 shall be in addition to any other fine, costs, fees, and penalties and shall not reduce or affect the distribution of an other fine, costs, fees, and penalties." 730 ILCS 5/5-9-1(c-9) (West 2004).[1]

---

[1] The $4 additional penalty was added to the statute effective June 20, 2003 (Pub. Act 93-

1-04-3545

32, eff. June 20, 2003 (adding 730 ILCS 5/5-9-1(c-9)), and was in effect at the time of

defendant's crime and conviction. This penalty was subsequently eliminated by the legislature.

Pub. Act 94-652, eff. August 22, 2005 (amending 730 ILCS 5/5-9-1(c-9)).

1-04-3545

Recently, in People v. Jamison, 365 Ill. App. 3d 778 (2006), this court considered the same issue raised by defendant here. In Jamison, we found the defendant should be awarded the $5-per-day credit against the $4 additional penalty and concluded:

> "Where there is no indication that the legislature intended
> to depart from the plain meaning of the statute, the additional
> penalty imposed on defendant is a pecuniary punishment in the
> nature of a fine. Thus, pursuant to section 110-14, the fine is to be
> offset by the $5-per-day credit. We note that when the legislature
> has chosen to exclude an amount from presentence credit under
> section 110-14 it has explicitly done so. [Citations.] Had the
> legislature intended to exclude section 5-9-1(c-9) from the $5-per-
> day credit, the legislature could have specifically made such an
> exclusion." Jamison, 365 Ill. App. 3d at 782-83, citing Fort, 362
> Ill. App. 3d at 6.

Likewise, we find defendant is entitled to a credit of $4 against the Traffic and Criminal Conviction Surcharge Fund penalty based upon the $5-per-day credit.

Finally, we consider defendant's challenge to the imposition of the $20 fine for the Violent Crime Victims Assistance Fund (725 ILCS 240/10(c) (West 2004)). Defendant contends the fine was improper in this case because it can only be assessed if no other fines are imposed.

Section 10(c) of the Violent Crime Victims Assistance Act provides, in relevant part:

> "(c) When any person is convicted *** of an offense listed

> below \*\*\* and no other fine is imposed, the following penalty
>
> shall be collected by the Circuit Court Clerk:
>
> \*\*\*
>
> (2) $20, for any other felony or misdemeanor \*\*\* ." 725
>
> ILCS 240/10(c)(2) (West 2004).

As we have previously discussed, the $500 drug assessment imposed in this case was pecuniary in nature and constituted a fine. Fort, 362 Ill. App. 3d at 8. Therefore, under the plain language of section 10(c), defendant should not have been assessed a $20 fee for the Violent Crime Victims Assistance Fund. See People v. Whitney, 188 Ill. 2d 91, 97 (1999) (the primary rule of statutory construction is to ascertain and give effect to the legislature's intent and a statute's language provides the best means of determining the intent of the legislature). Accordingly, we strike the $20 fee from the trial court's order.

For the foregoing reasons, we amend the trial court's order assessing fines, fees, and costs to reflect a credit of $504, and strike from the order the $5 fee for the Spinal Cord Fund and the $20 fee for the Violent Crime Victims Assistance Fund. We otherwise affirm defendant's conviction and sentence.

Affirmed as modified.

WOLFSON, P.J., and GARCIA, J., concur.